IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-03236-MEH

MELEAHA R. GLAPION,

      Plaintiff,

v.

SALLY JEWELL, Secretary, U.S. Department of the Interior,

      Defendant.

---

## ORDER

---

**Michael E. Hegarty, United States Magistrate Judge**.

      Before the Court is Defendant's Motion for Summary Judgment ("Motion") [filed January 16, 2016; docket #54].  The Motion is fully briefed, and the Court finds that oral argument will not assist in its adjudication of the Motion.  Based on the record herein and for the reasons that follow, the Court **grants** the Motion.[1]

## BACKGROUND

### I.      Procedural History

      Plaintiff, proceeding *pro se*, initiated this action on November 26, 2014.  Complaint, docket #1.  Plaintiff's claims arise from her denial of employment wit the United States Department of the Interior ("DOI").  *See generally* Complaint, docket #1.  She alleges she was discriminated against on the basis of race, color, and sex, and retaliated against based on prior Equal Employment Office

---

[1]Pursuant to 28 U.S.C. § 636(c) and D.C. Colo. LCivR 40.1(c), the parties consented to the jurisdiction of this Court to conduct all proceedings in this civil action.  Dockets ##17-18.

("EEO") activity when the DOI first selected her for employment at a lower level than she thought

she was qualified (GS-7 instead of GS-9), and then rescinded her employment offer. *Id.* She brings

both her claims under Title VII of the Civil Rights Act of 1964, as amended ("Title VII"). *Id.*

## II.    Findings of Fact

The Court makes the following findings of fact viewed in the light most favorable to

Plaintiff, who is the non-moving party in this matter.[2]

### A.    The Selection Process

1.      In late 2013, the Bureau of Reclamation ("BOR"), a component of the DOI, advertised for

two Program Analyst positions, between the grades of GS-5 and GS-9. Ex. 1 (position

announcement) (authenticated by Ex. 2 (Plaintiff deposition) at 43:25-44:15).

2.      The position announcement stated, in part, "After making a tentative job offer, a suitability

---

[2]Because of the difficulty the Court has had with Plaintiff's responses, which the Court
finds to be excessive and largely nonresponsive, the Court has for ease of factual analysis in this
Order adopted the structure and numbering convention presented by Defendant in the Motion.
Despite adopting the structure provided by Defendant, the Court notes that it has not simply
adopted Defendant's version of the facts without a thorough review of the evidence provided.
The Court has fully considered Plaintiff's Response [*see* dockets #63] and all of its 63 exhibits,
despite the fact that Plaintiff violated this Court's Order by far exceeding the maximum pages
allowed for her Response. The Court initially limited Plaintiff to a 30-page Response [*see*
docket #54] but then granted her motion to file 35 pages [*see* dockets ##61-62]. Despite this,
Plaintiff filed both a 40-page "Summary Judgment Response" [docket #63] as well as a 37-page
"Separate Facts Relevant to the Issues Presented for Review" as an exhibit [docket #63-62]. The
Court could strike this document as such information belongs in the Response itself, yet the
Court has considered Plaintiff's additional facts nonetheless.

    With rare exception, the Court has found the facts as propounded by Defendant to be
supported by evidence. Where Defendant's facts had error, the Court has altered its findings of
fact to fit the evidence. Meanwhile, Plaintiff's attempts to counter Defendant's facts and proffer
her own are either unsupported entirely, contain inadmissable hearsay, are improperly cited, or
are objected to without basis. None of the additional facts change the outcome of the Court's
analysis.

    Finally, the Court notes that unless otherwise indicated, the citations provided are to
exhibits attached to Defendant's Motion.

and/or security background check will be conducted." Ex. 1 at 5.

3.      Karl Stock, Manager of the Reclamation Law Administrative Division, was responsible for making the recommendations for hiring from that position announcement; he eventually recommended a selectee at GS-7 (Plaintiff) and one at GS-9 (Scott Hutchins).   Ex. 3 (Stock Declaration) at ¶ 2.   They were hired off of two different job numbers but both under the same, single hiring process.   *See*, *e.g.*, docket #63-17 at 1 (listing both announcement numbers in weighing and rating plan); docket #63-20 at 1 ("Consolidated Merit Promotion Worksheet" for Plaintiff listing both announcement numbers); docket #63-2- at 2 ("Consolidated Merit Promotion Worksheet" for Hutchins listing both announcement numbers); docket #63-21 ("Panel Members and Subject Matter Experts Statement of Understanding and Agreement" listing both announcement numbers); docket #63-22 at 2 (white board notes regarding candidates for both positions); docket #63-22 at 2 (email from Stock asking for recommendations regarding candidates for both positions); *see also* Stock Supplemental Declaration, exh. 16 ¶¶ 4-8 (indicating that the two job announcement numbers were part of the same hiring process).

4.      Stock asked that a rating panel assist in the preliminary selection process by evaluating application materials submitted by applicants. Ex. 3 at ¶ 4.

5.      There were two people on the ratings panel, and they memorialized their ratings on ratings sheets.  Ex. 3 at ¶ 4.

6.      The ratings sheets rated Plaintiff 35 out of 70 points and noted "Experience minimally related to water resources, but demonstrated evidence of communication outside of her organization and outreach skills.  Responses showed some weakness in her writing skills."  Ex. 3 at ¶ 4.

7.      The ratings sheets rated Hutchins 56 out of 70 points. Ex. 3 at ¶ 4.

8.      In making his decision to offer Plaintiff a GS-7 and Hutchins a GS-9 position, Stock also considered the resumes and responses to questions on USAJobs from Plaintiff and Hutchins.  Ex. 3 at ¶ 5.

9.      Plaintiff provided a resume to be considered for the position.  Plaintiff's exh. 18.  She also provided responses to questions on USAJobs.  Ex. 4.  Ex. 3 at ¶ 5.  Plaintiff has a Masters of Public Administration.  *Id.*

10.     Hutchins also provided a resume and USAJobs responses to be considered for a position.  Ex. 5.  Ex. 3 at ¶ 5.

11.     In making his decision to offer Plaintiff a GS-7 and Hutchins a GS-9 position, Stock also considered the interviews he conducted of Plaintiff and Hutchins.  Ex. 3 at ¶ 6.

12.     From those interviews, Stock concluded that Hutchins articulated a far greater command of the principles of program and policy analysis as related to natural resources management than did Plaintiff. Ex. 3 at ¶ 6.

13.     Based on the panel rating sheets, resumes, USAJobs responses, and interviews, Stock concluded that it was far more likely that Hutchins would be able to immediately and readily take on program analysis assignments with some degree of independence, whereas Plaintiff would need more training, coaching, and time on the job in order to perform at the same level.  Ex. 3 at ¶ 7. Hutchins was nearing completion of a law degree and had taken classes in water law and natural resources [*see* docket #63-19 at 6-7], which relate directly to the job announcement regarding water-resource policy and contracting for the BOR [*see* docket #54-1- at 2].

14.     Those are the key differences for Stock between GS-9 and GS-7 Program Analysts, and those are the reasons Stock recommended offering Plaintiff a GS-7 position rather than a GS-9 position.

Ex. 3 at ¶ 7.

15.    At the time Stock recommended the selection of Plaintiff, he was aware of Plaintiff's prior

EEO activity because she had told him about it.  Ex. 6 (Stock EEO Affidavit) at 3, 9; Ex. 2 at 78:23-

80:20.

        **B.    Withdrawal of the Offer**

16.    Plaintiff was offered the GS-7 position, and she accepted.  Ex. 7 (Smith Declaration) at ¶ 2.

17.    Jawann Smith, a Human Resources Specialist, asked Plaintiff to complete an OF-306

(Declaration for Federal Employment).  Ex. 7 at ¶ 3.

18.    Persons who accept federal employment offers are required as a matter of course to complete

OF-306s and other information prior to actual employment.  Ex. 7 at ¶ 4.

19.    The instructions for the OF-306 stated, in part, "[t]he information collected on this form is

used to determine your acceptability for Federal and Federal contract employment."  Ex. 8 (OF-306)

at 2 (authenticated at Ex. 2 at 57:20-58:5).

20.    Plaintiff's completed OF-306 was returned to BOR.  Ex. 8.

21.    Ron Dale was a Human Resources Officer at BOR at the time Plaintiff was extended an

offer.  Ex. 9 (Dale Declaration) at ¶ 1.

22.    Dale has extensive experience working in federal HR, including positions in which he had

knowledge of EEO and Merit System Protection Board ("MSPB") processing times. Those positions

include: 1995 to 2000 as Employee Relations Specialist at the Air Force Academy Personnel Office;

2000 to 2001 as Employee Relations Specialist for the Lower Colorado Region of BOR (when he

was the technical representative for MSPB cases working with an agency attorney); 2001 to 2005

as Human Resources Director for the Forest Service Rocky Mountain Research Station (when he

was the key point of contact for all MSPB and EEO cases); 2005 to 2006 as the Forest Service Chief

of Labor and Employee Relations Branch (when he saw tracking of EEO and MSPB complaints and

how long they took from start to finish); and from 2006 to 2013 as Labor Relations Specialist at

Animal Plant Inspections Service, USDA.  Ex. 9 at ¶ 3.

23.     In some of those positions, Dale participated or monitored EEO and MSPB cases in one way

or another and was aware of how long EEO and MSPB cases can take to reach final disposition.  Ex.

9 at ¶ 3.

24.     One of Dale's duties at BOR in 2014 was to do pre-screening of potential hires, that is,

reviewing materials provided by a selectee such as an OF-306, SF-50, and a selectee's resume, to

determine if there was a barrier to employment.  Ex. 9 at ¶ 2.

25.     Dale conducted a pre-screening for Plaintiff's selection.  Ex. 9 at ¶¶ 4-8.

26.     Dale reviewed Plaintiff's OF-306 and resume as part of the pre-screening process.  The OF-

306 asks various questions that may affect the employability of a selectee.  In the case of Plaintiff,

her response to question 12 drew Dale's attention.  Ex. 9 at ¶ 4.

27.      Question 12 of the OF-306 asks:

> During the past 5 years, have you been fired from any job for any reason, did you quit
> after being told that you would be fired, did you leave any job by mutual agreement
> because of specific problems, or were you debarred from Federal employment by the
> Office of Personnel Management or any other Federal Agency?  If 'YES,' use item
> 16 to provide the date, an explanation of the problem, reason for leaving, and the
> employer's name and address.

Ex. 9 (Dale Decl.) at ¶ 5; Ex. 8 at 3.

28.     Plaintiff answered "Yes" to question 12, and, under item 16, stated as follows:

> 03/30/12 wrongful removal from U.S. Department of Housing and Urban
> Development, Regional VIII Office of Field Policy and Management, 1670

6

Broadway St., Denver, CO 80202.  Matters are legally pending before administrative judges of BOTH THE Equal Opportunity Commission ([case number]) AND the Merit System Protection Board ([case number]).

Ex. 9 at ¶ 6; Ex. 8 at 4.

29.    Based on his experience as a federal government HR employee, Dale knew that EEO and MSPB proceedings can take many months or even years.  Ex. 9 at ¶ 10.

30.    In considering how that might affect the pre-screening of Plaintiff, Dale considered information from the Office of Personnel Management ("OPM") Suitability Processing Handbook. Ex. 9 at ¶¶ 7-9.

31.    It was Dale's understanding that suitability referred to whether a person could be employed by the federal government, and the OPM Handbook provided guidance on making that determination.  Ex. 9 at ¶ 7.

32.    Specifically, Dale considered a section of the OPM Handbook that read as follows (in excerpt):

> **RESULTS OF REVIEW ACTION**
> Subject has an appeal or litigation concerning a prior termination pending (an appeal to MSPB or the court system, an EEOC complaint, etc.) and the following conditions apply: (1) the employment termination is the primary issue in the case and sufficient details to adjudicate cannot be obtained; or (2) the actual conduct leading to the termination is being disputed and it is potentially disqualifying at face value. Notify the applicant that consideration for employment cannot occur until evidence showing the outcome of the appeal, hearing, or complaint, is submitted. When the evidence is received, continue processing.

Ex. 9 at ¶ 7.

33.    Based on his understanding of the OPM Handbook excerpt cited above, Dale did not believe that Plaintiff would meet OPM's suitability standards for employment.  Ex. 9 at ¶ 8.

34.    Based on Plaintiff's description in item 16 in her OF-306 ("wrongful removal"), Dale

believed that termination was the primary issue in her EEOC and MSPB cases, and believed that the only way that "sufficient details" to adjudicate her claim, as mentioned in the OPM Handbook excerpt cited above, could be obtained would be after a final determination was issued, whether by means of an EEOC or MSPB decision that Plaintiff did not appeal or when a federal court issued a final non-appealable decision. Ex. 9 at ¶ 9.

35.     Based on his experience as a federal government HR employee, Dale knew that EEO and MSPB proceedings could take many months or even years and therefore concluded, in accordance with the OPM guidance, that a determination of Plaintiff's suitability for employment could be not concluded until there was evidence of final dispositions of her EEOC and MSPB cases. Ex. 9 at ¶ 10.

36.     Therefore, because Plaintiff could not ultimately be deemed suitable for employment by the agency until the EEOC and MSPB processes had concluded, Dale thought that it was appropriate to withdraw Plaintiff's employment offer during the pre-screening process. Ex. 9 at ¶ 8.

37.     Until final evidence of the outcomes of the appeals was rendered, it made no sense to Dale to leave the Agency's offer languishing, unable to conclude the offer, while awaiting the outcome. He thought the best course of action was to withdraw the tentative offer. This made sense to him because, in his mind, and based on his decades of experience with EEOC and MSPB cases, a final disposition could have one of two outcomes: first, Plaintiff's challenge to her removal could fail, in which case BOR would consider the sustained reasons for her removal and how that might impact its decision to offer her employment; or, second, Plaintiff's challenge to her removal could succeed, and then she might go back to work for HUD. In either case, the final disposition would be important to BOR's employment decision. Ex. 9 at ¶ 11.

38.     Based on his analysis, Dale drafted a letter to Plaintiff (sent on April 10, 2014) that stated in part:

> Final consideration of employment and suitability cannot occur until a final disposition is made regarding your appeal. Final disposition of your case would not occur for a significant period of time, and the required background investigation cannot be completed prior to the conclusion of these matters, accordingly [BOR] is withdrawing its offer of employment. Our decision to withdraw the offer has nothing to do with the cases themselves, but rather the length of time the position would be open while Reclamation awaits completion of the background investigation.

Ex. 9 at ¶ 12; Ex. 10 (rescission letter).

39.     Dale assumed that if BOR held the position open pending the conclusion of the EEO and MSPB proceedings, BOR would not be able to hire a different person for the position for which Plaintiff was selected; Dale further assumed that once Plaintiff's tentative offer was rescinded, that BOR would be able to hire someone else; however, Dale did not confirm those assumptions with Karl Stock or anyone else.  Ex. 9 at ¶ 13.

40.     Dale was the one who decided to withdraw the offer of employment to Plaintiff; the decision was not made by Stock, Sharon Burke, Jawann Smith, or anyone else.  Ex. 9 at ¶ 14.

41.     However, he did advise Stock and Stock concurred with Dale's recommended course of action. Ex. 9 at ¶ 14.

42.     Dale sent the letter rescinding Plaintiff's job offer on April 10, 2014.  It was only later, on approximately April 22, 2014, that he was provided with a copy of the MSPB decision dated March 28, 2013 upholding Plaintiff's removal.  Prior to that time, the only information he had about her MSPB case was what she included on her OF-306. Ex. 9 at ¶ 15.

## C.    Actions After the Withdrawal of Plaintiff's Offer

43.     At approximately the same time that Plaintiff's offer for the GS-7 position was rescinded,

Lisa Vehmas, Stock's team lead for the Contracts team that would be working directly with the Program Analyst positions for which BOR had advertised, was promoted to be the manager of another division in Policy and Administration.  Ex. 3 at ¶ 8.

44.     That left the team lead position vacant, and because Stock heavily depend on that team lead to train new employees, particularly lower graded ones, Stock decided to postpone efforts to recruit additional employees for that team until the team lead vacancy was filled.  Ex. 3 at ¶ 8.

45.     By the time the team lead position was filled in early September 2014, changes in another program in Stock's division (Acreage Limitation) had freed up sufficient time from one of his program support staff on the Acreage Limitation team such that Stock was able to have that individual pick up most of the duties Stock had previously envisioned for the GS-7 Program Analyst position that had been tentatively offered to Plaintiff.  Ex. 3 at ¶ 8.

46.     As a result, no further recruitment efforts have been made for additional positions on the Contracts team (i.e., the team on which Stock had planned the GS-7 position offered to Plaintiff would be working).  Ex. 3 at ¶ 8.

### D.     EEO Process

47.     Plaintiff submitted a formal EEO complaint against the BOR at the end of May 2014.  Ex. 11 (Formal EEO Complaint) (authenticated at Ex. 2 at 75:3-5).

48.     On or about June 10, 2014, BOR's Civil Rights Division sent and Plaintiff received a letter that stated in part:

> We have determined that you are claiming you were discriminated against based on your race (Black American), color (Black), sex (Female), and reprisal (prior EEO activity), when:
> On March 4, 2014, you were selected for the position of Policy Analyst, GS-034305/7/9, advertised under Vacancy Announcement Number BR-DO-2013-192.
> On April 10, 2014, you received a letter from the Agency rescinding the March 4,

2014, employment offer.

Ex. 12 (6/10/14 Acceptance-of-issues letter) at 1, authenticated at Ex. 2 at 75:8-14.

49.     Plaintiff believes that the June 10, 2014 acceptance-of-issues letter accurately stated the substance of her claim with the exception that Plaintiff also believes that she made an Equal Pay Act claim in her formal EEO complaint.  Ex. 2 at 76:12-78:15.[1]

50.     Plaintiff believes that the following people discriminated against her with regards to the allegations in this case: Karl Stock, Ronald Dale, Jawann Smith, and Sharon Burke.  Ex. 13 (Plaintiff's interrogatory responses) at 5, 7.

51.     Smith had no input in deciding Plaintiff should be offered a GS-7 level for her selection as Program Analyst as opposed to GS-9 level and had no input in deciding that Plaintiff's job offer should be rescinded in April 2014.  Ex. 7 at ¶¶ 5-6.

52.     Burke was employed by BOR in 2014 as Personnel Security Officer/Lead Personnel Specialist, GS-0080-13, Security Safety & Law Enforcement in Lakewood, Colorado.  Ex. 14 (Burke Declaration) at ¶ 1.

53.     Burke had no input in deciding Plaintiff should be offered a GS-7 level for her selection as Program Analyst as opposed to GS-9 level and had no input in deciding that Plaintiff's job offer should be rescinded in April 2014.  Ex. 14 at ¶¶ 2-3.

**E.     Animus of Stock**

54.     Plaintiff has never heard Stock make any comments or read any comments by him that indicated to her animus against persons of her race.  Ex. 2 at 83:19-25.

55.     The same applies to color. Ex. 2 at 86:15-21.

56.     Plaintiff has never heard Stock make any comments that indicated to her animus against

women.  Ex. 2 at 86:22-87:2.

57.     The only thing written by Stock (or that Plaintiff believes was written by Stock) that Plaintiff

believes shows animus by Stock against women is the rescission letter.  Ex. 2 at 87:3-8.

## LEGAL STANDARDS

### I.     Summary Judgment

A motion for summary judgment serves the purpose of testing whether a trial is required.

*Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003).  The Court shall grant

summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits

show there is no genuine issue of material fact, and the moving party is entitled to judgment as a

matter of law.  Fed. R. Civ. P. 56(c).  A fact is material if it might affect the outcome of the suit

under the governing substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The moving party bears the initial responsibility of providing to the Court the factual basis

for its motion.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "The moving party may carry

its initial burden either by producing affirmative evidence negating an essential element of the

nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence

to carry its burden of persuasion at trial."  *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976,

979 (10th Cir. 2002).  Only admissible evidence may be considered when ruling on a motion for

summary judgment.  *World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir.

1985).

The non-moving party has the burden of showing there are issues of material fact to be

determined.  *Celotex*, 477 U.S. at 322.  That is, if the movant properly supports a motion for

summary judgment, the opposing party may not rest on the allegations contained in his complaint,

but must respond with specific facts showing a genuine factual issue for trial.  Fed. R. Civ. P. 56(e); *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("[t]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.") (emphasis in original) (citation omitted); *see also Hysten v. Burlington Northern & Santa Fe Ry.*, 296 F.3d 1177, 1180 (10th Cir. 2002).  These specific facts may be shown "'by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves.'" *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1008 (10th Cir. 1998) (quoting *Celotex*, 477 U.S. at 324).  "[T]he content of summary judgment evidence must be generally admissible and . . .  if that evidence is presented in the form of an affidavit, the Rules of Civil Procedure specifically require a certain type of admissibility, *i.e.*, the evidence must be based on personal knowledge." *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005). To avoid summary judgment, Plaintiff must "present sufficient, competent, contradictory evidence to establish a genuine factual dispute." *Gen. Steel Domestic Sales, LLC v. Chumley*, __ F.3d __, No. 13-cv-00769-MSK-KMT, 2015 WL 5353080, at *5 (D. Colo. Sept. 15, 2015) (citations omitted).  "The court views the record and draws all inferences in the light most favorable to the non-moving party." *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. PepsiCo, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005).

## II.     *Pro Se* **Plaintiff's Pleadings**

A federal court must construe a *pro se* plaintiff's "pleadings liberally, applying a less stringent standard than is applicable to pleadings filed by lawyers.  [The] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (quotations

and citations omitted). The Tenth Circuit interpreted this rule to mean, "if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

However, this interpretation is qualified in that it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Id.*; *see also Peterson v. Shanks*, 149 F.3d 1140, 1143 (10th Cir. 1998) (citing *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989)). A dismissal "without affording the plaintiff notice or an opportunity to amend is proper only 'when it is patently obvious that plaintiff could not prevail on the facts alleged, and allowing him an opportunity to amend his complaint would be futile.'" *Curley v. Perry*, 246 F.3d 1278, 1281–82 (10th Cir. 2001) (quoting *Hall*, 935 F.2d at 1110 (additional quotation marks omitted)).

The Court thus notes here, at the outset, that the Court has throughout the course of this litigation sought to decipher Plaintiff's prolix filings. Despite the Court's ample instruction to Plaintiff [*see* dockets ##121, 129] and despite giving Plaintiff extensive time to respond as the Motions were filed in March 2015 (yet Plaintiff did not file the operative Response until September 2015), Plaintiff's Response continues to be plagued by the same issues the Court has seen again and again. Throughout her Response [*see* docket #137], Plaintiff gives narrative but no contrary evidence or legal authority to support her assertions; she cites to documents that have been superseded; she cites to a jumble of documents without directing the Court to specific parts of the documents, some of which contain hundreds of pages with dozens of exhibits; and she offers inadmissible hearsay. *See, e.g.*, docket #137, responses to facts ##2, 16(a-e), 19, 28.

14

The Court is mindful that it must construe the filings of a *pro se* litigant liberally; however, Plaintiff's filings have for the large part been "verbose, redundant, ungrammatical, [and] unintelligible." *See* D.C. Colo. LCivR 7.1  The filings for these Motions are little different, despite the Court's painstaking efforts to provide Plaintiff with ample opportunity, including allowing three responses to this Motion.  Instead, Plaintiff continues to submit many hundreds of pages of written briefs and documents in an attempt to prove her case; she in the operative Response has attempted to cite appropriately, but she makes voluminous citations not linked to legal argument.  In fact, her legal argument (lacking citations to law) essentially appears in the table of contents to her response (*see* docket #137 at I-v), with the following 100 pages filled with narrative pointing to documents that do not show a material dispute.  Thus, where Plaintiff has not made appropriate links of facts and law, and where her arguments are vague and unclear and listed without a specific reference, the Court "will not search the record in an effort to determine whether there exists dormant evidence which might require submission of the case to a jury." *Gross v. Burggraf Const. Co.*, 53 F.3d 1531, 1546 (10th Cir. 1995).  As the Seventh Circuit put it, "Judges are not like pigs, hunting for truffles buried in briefs." *U.S. v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991), *quoted in Gross*, *id.*

The Court has extensively reviewed all of Plaintiff's Response and the documents to which she cites, as well as her Surreply [*see* docket #149], and has made a sincere effort to give her the benefit of the doubt.  Despite this truffle-hunt, the Court is left with scant arguments made by Plaintiff, instead with page after page of largely unsubstantiated narrative; thus, in the analysis that follows, her arguments are thin or nonexistent because she fails to present them coherently, if at all.

## ANALYSIS

### I.    Exhaustion

Under Title VII, "exhaustion of administrative remedies is a prerequisite to suit." *Apsley v. Boeing Co.*, 691 F.3d 1184, 1210 (10th Cir. 2012) (citing *Shikles v. Sprint/United Mgmt. Co.*, 426 F.3d 1304, 1317 (10th Cir. 2005); *MacKenzie v. City of Denver*, 414 F.3d 1266, 1274 (10th Cir. 2005)).  Further, administrative remedies generally must be exhausted as to each discrete instance of discrimination or retaliation.  *Id.* (citing *Foster v. Ruhrpumpen, Inc.*, 365 F.3d 1191, 1194-95 (10th Cir. 2004)).  The purpose behind the requirement of exhausting a claim with the EEOC is two-fold: "protect[ing] employers by giving them notice of the discrimination claims being brought against them, [and] providing the EEOC with an opportunity to conciliate the claim." *Foster*, 365 F.3d at 1195.  A federal employee is required to contact an EEO counselor "within 45 days of the date of the matter alleged to be discriminatory."  29 C.F.R. § 1614.105(a)(1).  Limited types of personnel actions may instead be appealed to the MSPB, including removals, lengthy suspensions, or reductions in pay or pay grade.  5 U.S.C. § 7512.  A federal employee may within the MSPB appeal an adverse employment decision if she asserts that the action was made based on discrimination that Title VII disallows.  *Kloeckner v. Solis*, 133 S. Ct. 596, 600 (2012) (citing 5 U.S.C. § 7702(a)(1)).  The employee may then appeal such decision to U.S. District Court, where any discrimination issue is reviewed de novo.  5 U.S.C § 7703(c).  Further, each act of discrimination must be exhausted. *Martinez v. Potter*, 347 F.3d 1208, 1210 (10th Cir. 2003).

Here, Defendant argues that Plaintiff's formal EEO complaint and acceptance-of-issues letter [*see* facts ##47 -48] indicate Plaintiff exhausted the following claims: (1) discrimination based on race, color, and sex, and (2) retaliation based on prior EEO activity related to two acts – a GS-7

rather than GS-9 selection, and the rescinding of her employment offer. Motion, docket #54 at 12. Plaintiff responds that she also exhausted a claim involving alleged improper processing of her administrative EEO complaint. Response, docket #63 at 23. Plaintiff also alleges that she exhausted other events that happened after the filing of her formal administrative EEO complaint. *See* docket #54-11 at 1.

The Court's review shows that the acceptance-of-issues letter did not include the additional issues Plaintiff now attempts to assert. *See* docket #54-12. Defendant argues and the Court agrees that issues must be included in the acceptance-of-issues letter to be exhausted. *McKeithan v. Boarman*, 803 F. Supp. 2d 63, 68 (D.D.C. 2011) ("Courts have generally held that failure to response to the framing of the issue supports a finding that a plaintiff has failed to exhaust his administrative remedies with respect to those claims not approved by the EEO.") (internal quotation omitted), *aff'd sub nom. McKeithan v. Vance-Cooks*, 498 F. App'x 47 (D.C. Cir. 2013). Because each act must be exhausted, pursuant to *Martinez*, the Court further finds that any events that occurred after an EEO complaint is filed cannot be exhausted save for the filing of another, new EEO complaint or, in the alternative, an amendment to an existing EEO complaint. *See Eisenshour v. Weber Cnty.*, 744 F.3d 1220, 1227 (10th Cir. 2014). Plaintiff here did neither; Plaintiff's claims in this case must be limited to those in her EEO complaint: (1) discrimination based on race, color, and sex, and (2) retaliation based on prior EEO activity related to two acts – a GS-7 rather than GS-9 selection, and the rescinding of her employment offer.

## II.    Discrimination

A plaintiff proves a violation of Title VII either by direct evidence of discrimination or by following the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93

17

S. Ct. 1817, 36 L. Ed.2d 668 (1973)." *See Khalik*, 671 F.3d at 1192.  Direct evidence is "evidence, which if believed, proves the existence of a fact in issue without inference or presumption. . . . A statement that can plausibly be interpreted two different ways – one discriminatory and the other benign – does not directly reflect illegal animus, and, thus, does not constitute direct evidence." *Hall v. U.S. Dept. of Labor*, 476 F.3d 847, 854-55 (10th Cir. 2007).  "Statements of personal opinion, even when reflecting personal bias or prejudice, do not constitute direct evidence discrimination . . . ." *Id*. at 855.  Meanwhile, the "*McDonnell Douglas* . . . three-step analysis requires the plaintiff first prove a *prima facie* case of discrimination." *McDonnell Douglas*, 411 U.S. at 792.  To establish a *prima facie* case, a plaintiff must establish that (1) she is a member of a protected class, (2) suffered an adverse employment action, and (3) the challenged action took place under circumstances that give rise to an inference of discrimination. *EEOC v. PNVF, LLC*, 487 F.3d 790, 800 (10th Cir. 2007).  If the plaintiff makes out a *prima facie* case, "[t]he burden then shifts to the defendant to produce a legitimate, non-discriminatory reason for the adverse employment action." *Khalik*, 671 F.3d at 1192.  If defendant meets that burden, "the burden then shifts back to the plaintiff to show that [his] protected status was a determinative factor in the employment decision or that the employer's explanation is pretext." *Id.*

Plaintiff asserts generally that she has direct evidence of discrimination.  Response, docket #63 at 24-25.  She cites to two statements as proof – an email from Dale to his supervisors and the withdrawal letter itself.  *Id*. at 25.  The email reads as follows:

> Just a heads up.  With the help of Terry Berger we were able to find that Karl's selection (Ms. Glapion) misrepresented the fact that she already had in-hand a MSPB decision supporting her removal! (On cyber feds her case is published and it was decided March 28, 2013).  She said "she had appeals going" but in fact, the MSPB may not even accept the appeal.  The truth is, she was removed for cause, and she had a decision supporting her removal.  In reading the case file, I am confident we

do not want her in P&A.  (Professional litigant).

*Id.*  Plaintiff highlights the last sentence and "professional litigant" as direct evidence of discrimination.  *Id.*  Defendant responds that Dale did not comment at all as to the reasons for withdrawing the offer, instead explaining additional information that had been discovered about Plaintiff.  Reply, docket #68 at 22-23.  Further, Dale's characterization of Plaintiff as a "professional litigant" mirrors Plaintiff's own characterization of herself as such.  *Id.* at 23.  On Plaintiff's resume, she describes herself as "Sole Proprietor/*Pro se* Litigant/Advocate for Children & Civil Rights for PRO SE LLC.  *See* docket #54-3 at 7-8.  Regarding the withdrawal letter, it provides the reason as follows: "Our decision to withdraw the offer has nothing to do with the cases themselves, but rather the length of time the position would be open while Reclamation awaits completion of the background investigation."  *See* fact #38.

The Court concludes Plaintiff has provided no evidence that directly shows discriminatory animus as these statements – and others mentioned by Plaintiff in passing in her Response – can be read as being benign and do not constitute direct evidence pursuant to *Hall*.  Plaintiff has also shown no inference of discriminatory animus pursuant to *McDonnell Douglas*.  In fact, the record is void of discriminatory animus.  Because additional reasons exist that Plaintiff's two specific incidents of alleged discrimination fail, the Court also further elaborates on its analysis of both below.

A.   GS-7 Position Versus GS-9 Position

Defendant does not for purposes of this Motion dispute that Plaintiff meets the first and second prongs of the general discrimination prima facie elements: she is a member of a protected class, and she suffered an adverse employment action.  However, Defendant asserts that Plaintiff does not have evidence to meet the third prong – that the challenged action took place under

circumstances giving rise to an inference of discrimination. Motion, docket #54 at 13-15.

The third prong may be established by a plaintiff in a number of ways, but the most common is to show that similarly situated employees were treated differently. *Hysten v. Burlington N. Santa Fe Ry. Co.*, 296 F.3d 1177, 1181 (10th Cir. 2002). To show such similar conduct, a plaintiff must show the similarly situated employee "had engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mackenzie v. City & Cnty. of Denver*, 414 F.3d 1266, 1278 (10th Cir. 2005). However, the Tenth Circuit also stressed that "courts must be sensitive to the myriad of ways such an inference can be created." *Id.* (internal quotations and citations omitted). In *Plotke v. White*, 405 F.3d 1092, 1101 (10th Cir. 2005), the court listed additional evidence a plaintiff could use to show the inference, including "actions or remarks made by decisionmakers that could be viewed as reflecting a discriminatory animus," "preferential treatment given to employees outside the protected class," or "a pattern of recommending the plaintiff for positions for which she is not qualified" and "failure to surface plaintiff's name for positions for which she is well qualified." *Id.*

Here, Defendant asserts there is no evidence of a comparator. Motion, docket #54 at 14. Plaintiff does not directly respond to this but appears to argue that her qualifications were superior to Hutchins's. Response, docket #63 at 30. However, for differences in qualifications to be evidence of pretext, such differences must be "overwhelming," or so glaring as to "jump off the page and slap us in the face." *Jaramillo v. Colo. Judicial Dep't*, 427 F.3d 1303, 1308-09 (10th Cir. 2005) (quoting *Sanchez v. Philip Morris*, 992 F.2d 244, 247-48 (10th Cir. 2005) and *Odom v. Frank*, 3 F.3d 839, 847 (5th Cir. 1993)). The Court concludes that Plaintiff's qualifications are not objectively superior to Hutchins's; instead, Hutchins was nearing completion of a law degree and

20

had taken classes in water law and natural resources [*see* fact #13], which relate directly to the job announcement regarding water-resource policy and contracting for the BOR.  Plaintiff has a Masters of Public Administration and government employment – but no experience in water-resource policy [*see* fact #9], thus the differences in qualifications are hardly "overwhelming" to show pretext pursuant to *Jaramillo*.

Here, Hutchins was selected for the GS-9 position, but Defendant notes the facts show that Plaintiff and Hutchins were situated very differently.  Motion, docket #54 at 14.  Stock, the decisionmaker who offered Plaintiff the GS-7 position, noted that the ratings panel gave Plaintiff 35 out of a possible 70 points and wrote that she showed "some weakness in her writing skills," while the same panel gave Hutchins 56 points.  *See* facts ##6-7.  Hutchins was also considered to have articulated a far great command of the program and of policy analysis related to natural resources management than Plaintiff.  *See* fact #12.  Thus, Stock concluded that Hutchins would be able to start the position immediately and work somewhat independently, taking on more and more responsibility, yet Plaintiff would need additional training.  *See* fact #13.  Therefore, Defendant argues and the Court agrees, that to Stock – the decisionmaker offering the job – Plaintiff and Hutchins were not similarly situated.

Further, Plaintiff gives no other evidence satisfying the alternative mechanisms of meeting the third prong's requirements, such as remarks by decisionmakers that could be viewed  as reflecting a discriminatory animus.  Plaintiff admits she has not read or heard comments made by Stock that would indicate discriminatory animus against people of her race, color, or sex.  *See* facts ##54-57. Plaintiff does argue generally that the selection process itself provides evidence discrimination occurred, that there were no other Black African American females in the department

21

for which she was applying, and that other employees in the department seemed to have opinions that show discriminatory animus. *See generally* Response, docket #63 at 26-36. Plaintiff's argument about the selection process being flawed is without merit and fails to show discriminatory animus. Her argument about the number of like individuals in the department fails because for employment statistics to show discriminatory animus, a plaintiff must show evidence eliminating non-discriminatory reasons for the statistics, *Luster v. Vilsack*, 667 F.3d 1089, 1094 (10th Cir. 2011), which Plaintiff fails to do. Her argument about other employee's opinions showing discriminatory animus fails as well as they are vague and not specifically relating to anything discriminatory; further, opinions about discrimination is not evidence of discrimination. *See, e.g., Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1170 (10th Cir. 1998).

Additionally, Defendant argues the BOR has a legitimate, nondiscriminatory reason for offering Plaintiff a GS-7 position, and there is no evidence of pretext. Motion, docket #54 at 15. Stock believed the Hutchins appeared to be better qualified, as discussed above; Plaintiff provides no evidence to indicate to the Court that his reason was pretextual. The Court concludes BOR had legitimate, nondiscriminatory reasons for offering Plaintiff a GS-7 position and not a GS-9 position.

Therefore, the Court finds that the Defendant has shown there is no genuine dispute as to any material fact regarding the discrimination claim, Plaintiff has not provided argument or evidence showing she meets the third element of the prima facie case, and Defendant has shown it had legitimate nondiscriminatory reasons for the action it took with no evidence from Plaintiff regarding pretext. Thus, the Court dismisses the discrimination claim regarding Plaintiff being offered the GS-7 position versus the GS-9 position.

### B.       Withdrawal of Offer

Defendant also argues Plaintiff's second claim – that she was discriminated against in the withdrawal of the offer for employment – should be dismissed, because after the offer to Plaintiff was withdrawn, BOR did not try to fill the position.  Motion, docket #54 at 15.  Plaintiff fails to respond to this point.  *See generally* Response, docket #63.

Essentially, Plaintiff's argument makes a failure-to-hire claim.  *See* Complaint, docket #1 at 9.  To establish a prima facie case discrimination claim, a plaintiff must show that: "(1) plaintiff belongs to a protected class; (2) plaintiff applied and was qualified for a job for which the employer was seeking applicants; (3) despite being qualified, the plaintiff was rejected; and (4) after plaintiff's rejection, the position remained open and the employer continued to seek applicants from persons of [plaintiff's] qualifications."  *Garrison v. Gambino*, 428 F.3d 933, 937 (10th Cir. 2005) (internal quotation marks omitted).

Defendant argues Plaintiff cannot meet the fourth prong, because after Plaintiff's offer was withdrawn, BOR stopped recruitment efforts for the position Plaintiff would have filled.  *See* fact #46.  The agency did so because of reorganization that occurred in the area Stock supervised and in which Plaintiff would have been working.  *Id*. This reorganization led to a team lead being promoted and then, months later when that position was filled, another employee had time to complete most of the duties that Stock had originally thought would be completed by the GS-7 position (the position that had been offered to Plaintiff).  *Id*.  As a result of these changes in duties, no further recruitment efforts occurred for the GS-7 position, and no one was hired into that position.  *Id*.

Further, Defendant argues BOR had a legitimate, nondiscriminatory reason for withdrawing

23

Plaintiff's employment offer.  Motion, docket #54 at 16.  Dale, a BOR HR employee, conducted a pre-screening of potential hires to determine if any barriers to employment existed.  *Id.*  Plaintiff submitted an OF-306 form, typical procedure after offers are accepted, on which she disclosed that she had been removed from HUD in March 2102 and had pending challenges to that removal before the EEOC and the MSPB.  *See* fact #28.  Dale knew from his experience working in HR for the federal government that resolution of such matters could take many months or even years.  *See* facts ##35-37.[3]  Dale also considered information from the OPM Suitability Processing Handbook, which noted that if the potential employee has an appeal or litigation concerning prior termination pending and certain conditions apply, "then the processing of the suitability determination should be paused until evidence of that appeal or litigation is received."  *See* fact #32.  Dale believed that Plaintiff's situation fell within this portion of the Handbook and concluded she could not be suitable for employment until after her EEOC and MSPB actions concluded, so he rescinded Plaintiff's offer.  *See* fact #36.  Dale believed that if Plaintiff lost the challenge to her removal from HUD, the BOR would consider the sustained reasons for her removal, which could impact BOR's decision to offer her a job.  *See* fact #37.  In the alternative, if Plaintiff prevailed in the HUD-removal challenge, she might go back to work for HUD.  *Id.*

Defendant concludes and the Court agrees that withdrawing an offer because too much time could pass before Plaintiff could actually be employed is a legitimate, nondiscriminatory reason for rescinding the employment offer.  Plaintiff offers no evidence that Dale's reason was pretextual.  Thus, the Court dismisses the discrimination claim regarding the withdrawal of the offer.

---

[3]The Court takes judicial notice that Plaintiff's legal action in the matter of her HUD employment – *Glapion v. Castro*, 14-cv-01699-MEH – has not yet concluded as Plaintiff appealed to the Tenth Circuit (case No. 15-1443) this Court's order granting summary judgment.

24

### III.     Retaliation

Plaintiff's retaliation claim involves the same acts asserted in her discrimination claims; the same burden shifting applies.  *Fischer v. Forestwood Co., Inc.*, 525 F.3d 972, 979 (10th Cir. 2008).

The elements necessary to establish a prima facie case for retaliation claim under Title VII are (1) the plaintiff engaged in protected opposition under Title VII, (2) a reasonable employee would have found the challenged action materially adverse, and (3) a causal connection existed between the protected activity and the materially adverse action.  *Burlington*, 548 U.S. at 67-68.  The second prong requires material adversity "because we believe it is important to separate significant from trivial harms.  Title VII, we have said, does not set forth a general civility code for the American workplace."  *Id.* at 68  (internal quotations and citations omitted).  Rather, the intent of the Title VII prohibition against retaliation is to disallow actions of employers that are likely to deter victims from reporting discrimination to their employers, the EEOC, and the courts.  *Id*. at 69.  The fact that an employee continues to be undeterred in pursuit of a remedy may shed light on whether the actions were sufficiently material and adverse to be actionable.  *Somoza v. Univ. of Denver*, 513 F.3d 1206, 1214 (10th Cir. 2008).

Defendant does not dispute that Plaintiff can meet the prima facie case for retaliation, but argues Defendant had legitimate, nondiscriminatory reasons for its actions, as detailed above.  Motion, docket #54 at 18.  The Court is not persuaded that any of the actions complained of by Plaintiff were not made for legitimate, nondiscriminatory reasons, as discussed in detail above.  For the same reasons, the Court dismisses Plaintiff's retaliation claim.

IV.     **Fair Labor Standards Act ("FLSA"): Equal Pay Act ("EPA")**

Plaintiff's Response raises this issue for the first time.  Response, docket #63 at 33.  While she mentioned an EPA claim in her formal EEO complaint, she did not raise this claim in this Court in her Complaint.  *See* docket #1.  Regardless, the EPA applies to employees, not prospective employees.  *See* 29 U.S.C. § 206(d).  Because Plaintiff was never employed by the agency at issue in this case, she may not bring an EPA claim.  *See Riser v. QEP Energy*, 776 F.3d 1191, 1196 (10th Cir. 2015) (a plaintiff bringing an EPA claim must show she was performing work which was substantially equal to that of other employees).  Thus, even if the Court were to consider the EPA claim, it fails.

## CONCLUSION

Accordingly, Defendant's Motion for Summary Judgment [filed January 16, 2016; docket #54] is **granted**.  The case is **dismissed with prejudice**, and **costs shall be awarded** in accordance with Fed. R. Civ. P. 54 and D.C. Colo. LCivR 54.1.

Entered and dated at Denver, Colorado, this 2nd day of May, 2016.

BY THE COURT:

Michael E. Hegarty
United States Magistrate Judge